UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WAYNE F. PORTER #131315,

    Petitioner,    Case No. 2:10-cv-107

v.             Honorable R. Allan Edgar

JEFFREY WOODS,

    Respondent.
_____/

**OPINION**

    This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2241. A state prisoner seeking post-conviction relief from a federal court has but one remedy: an application for a writ of habeas corpus. *See Rittenberry v. Morgan*, 468 F.3d 331, 336-37 (6th Cir. 2006). All such applications for writs of habeas corpus are governed by § 2241, which generally authorizes federal courts to grant the writ – to both federal and state prisoners. *Id.* Most state prisoners' applications for writs of habeas corpus are subject also to the additional restrictions of § 2254. That is, if a state prisoner is "in custody pursuant to the judgment of a State court," his petition is subject to the procedural requirements of § 2254. *Id.*; *see also Thomas v. Crosby*, 371 F.3d 782, 803 (11th Cir. 2004); *Walker v. O'Brien*, 216 F.3d 626, 633 (7th Cir. 2000). Petitioner brings this action seeking relief from custody from a state court judgment. His action, therefore, is governed by § 2254. *Rittenberry v. Morgan*, 468 F.3d 331 (6th Cir. Nov. 9, 2006).

    Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the

petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Factual Allegations**

Petitioner states that at the time he entered prison in 1979, the Michigan Department of Corrections (MDOC) did a computation of his good time by awarding the good time "up front." Petitioner was awarded approximately 7,408 special good time days. On April 8, 2008, six months prior to petitioner's projected discharge date of October 1, 2008, a "Special Good Time Committee" met and awarded petitioner only 5,500 special good time days. Therefore, 1,908 days of special good time were forfeited and petitioner's discharge date became December 22, 2013.

On April 6, 2008, petitioner wrote to respondent, who responded that he wished to speak to petitioner in person about his sentencing structure. A few days later, petitioner met with respondent, who stated that even though petitioner had one of the best prison records he had ever seen, he felt that petitioner has manipulated the system and that he and Deputy Director Dennis Straub felt that the taking of 1,908 days of special good time was appropriate.

Petitioner filed a grievance regarding this issue and was interviewed on the grievance by Records Office Supervisor Carla J. Grenier. Grenier subsequently denied the grievance by stating

that Policy Directive 03.01.100, effective December 1, 2004, supersedes all prior policies regarding good time credits. Policy Directive 03.01.100 specifically states that special good time credits are not automatically earned but **MAY** (not shall) be granted. In addition, Grenier noted that ¶ M of the policy states that prisoners do not have the right to receive special good time credits, but that prisoners may be granted such credits if they meet specific criteria. Petitioner filed a step II appeal stating that the word "may" can also connote "must" or "shall." Petitioner's step II appeal was denied, as was his subsequent step III appeal.

Petitioner filed a complaint for writ of mandamus in the Michigan Court of Appeals, asserting the violation of his due process rights. In addition, Plaintiff stated that the reliance on the current version of Policy Directive 03.01.100 constituted an ex post facto violation. The Michigan Court of Appeals denied petitioner's action on September 25, 2009, without explanation. The Michigan Supreme Court denied petitioner leave to appeal on February 26, 2010. (Petitioner's Exhibits I and J.) Petitioner has now filed the instant application for habeas corpus relief asserting that the taking of the 1,908 days of special good time violated his rights under the Fourteenth Amendment.

## Discussion

As noted above, petitioner claims that his constitutional rights were violated when he only received a portion of the special good time credits available on his Special Maximum review. Plaintiff offers a copy of the step I response to his grievance, which states:

> **PD 03.01.100, Good Time Credits, effective 12/01/2004,** supersedes all prior policies on this issue (prisoner refers to 1976 policy as reference, which is incorrect). **PD 03.01.100, Good Time Credits** specifically states on page 3, paragraph L that SGT [special good time] credits are not automatically earned but **MAY** (not shall) be

> granted . . . . Paragraph M continues by stating prisoners **do not have a right** to receive SGT credits, however SGT credits **MAY** be granted only if prisoner meets specified criteria.
>
> The Good Time Committee thoroughly reviewed this case, and then determined that 5500 days should be granted. Warden Woods received and reviewed their recommendation, and prior to making final determination did consult with and review same with CFA Deputy Director Straub. The warden's final determination to grant 5500 days was based on all information provided, and is within his authority to do so (he could have granted anywhere between 0 days and the full 7408 days that were available to be granted).

(Plaintiff's Exibit D, p. 3.)

Petitioner claims that the reliance on this language, rather than the policy directive in effect at the time petitioner was sentenced, violates the constitutional prohibition against ex post facto laws. However, an ex post facto law must be a criminal or penal measure. *Weaver v. Graham*, 450 U.S. 24, 28-29 (1981); *Dobbert v. Florida*, 432 U.S. 282, 292-93 (1977). In addition, the Ex Post Facto clauses apply by their own force only to laws passed by Congress or state legislatures. *Marks v. United States*, 430 U.S. 188, 191-92 (1977). In this case, plaintiff is complaining about a policy directive, not a law passed by Congress or a state legislature. The court notes that the Michigan statute in effect at the time that petitioner was sentenced stated:

> In addition to disciplinary credits, a prisoner **may be** awarded 2 days per month special disciplinary credits for good institutional conduct on the recommendation of the disciplinary credit committee and the concurrence of the warden or superintendent based on an annual review of the prisoner's institutional record.

M.C.L. § 800.33 (as amended by P.A.1978, No. 80, § 1, Eff. Sept. 1, 1978) (emphasis added).

Therefore, the statute in effect at the time that petitioner's sentence was imposed gave him the same rights with regard to special good time as the current policy directive. In *Dyer v.*

*Bowlen*, 465 F.3d 280 (6th Cir. 2006), the Sixth Circuit found that a change in statutory language regarding the standard for granting parole could constitute an ex post facto violation. *Id.* at 292. However, as noted above, petitioner's claim in the instant action concerns an alleged change in the language of an MDOC policy directive. Moreover, the court notes that although petitioner claims that the policy directive in effect at the time of his imprisonment would have required that he be awarded 7,408 special good time days, petitioner fails to support this claim by offering a copy of the prior policy directive, or specifically quoting the language of that policy directive. Therefore, the court is unable to determine whether the prior policy directive would have resulted in petitioner being awarded all of the special good time days claimed by him. Accordingly, for the reasons stated above, petitioner's ex post facto claim is properly dismissed as being without merit.

Nor does petitioner's due process claim have any merit. As noted above, prisoners do not have an automatic right to receive special disciplinary credit, but may be rewarded such credit by the warden as a reward for good conduct. Special disciplinary credits are distinct from regular good time credits, which accrue automatically each month in which a prisoner is not found guilty of a major misconduct. *See* MICH. DEP'T OF CORR., Policy Directive 03.01.100. Therefore, the special disciplinary credits were not taken from petitioner, but were simply not earned by him. Accordingly, petitioner did not have a liberty or property interest in the special disciplinary credits and his procedural due process claim with regard to those credits is without merit. *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S. Ct. 1904, 1908 (1989) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571, 92 S. Ct. 2701, 2706 (1972)).

## Conclusion

In light of the foregoing, the Court will summarily dismiss petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of the State of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme

Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of petitioner's claims was debatable or wrong. Therefore, the Court will deny petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:     7/6/2010                               /s/ R. Allan Edgar
                                                  R. ALLAN EDGAR
                                                  UNITED STATES DISTRICT JUDGE